UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

YOLANDA R. ROSS,
      Plaintiff,

v.              DECISION AND ORDER
                 14-CV-444S
CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

      Defendant.

  1. Plaintiff, Yolanda R. Ross, challenges an Administrative Law Judge's ("ALJ") determination that she is not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff alleges that she has been disabled since February 19, 2010, due to degenerative heart disease, depression, anxiety, and foot pain following an ankle injury. Plaintiff contends that her impairments have rendered her unable to work. She therefore asserts that she is entitled to disability and supplemental income benefits under the Act.

  2. Plaintiff applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income benefits ("SSI") benefits on August 3, 2010. The Commissioner of Social Security initially denied her applications on December 13, 2010. Pursuant to Plaintiff's request, ALJ William M. Weir held an administrative hearing on June 11, 2012, at which time Plaintiff appeared with counsel and testified. The ALJ considered the case *de novo*, and on November 5, 2012, he issued a decision denying Plaintiff's application for benefits. On April 10, 2014, the Appeals Council denied Plaintiff's

request for review. Plaintiff filed the current civil action on June 10, 2014, challenging Defendant's final decision.[1]

3. On October 24, 2014, Plaintiff filed a Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket No. 8). On December 22, 2014, the Commissioner filed a Motion for Judgment on the Pleadings and in Response to Plaintiff's Brief. (Docket No. 10). Plaintiff filed a reply on January 13, 2015 (Docket No. 11), at which time this Court took the matter under advisement without oral argument. For the following reasons, Plaintiff's motion is granted and Defendant's motion is denied.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998); see also Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

---

[1] The ALJ's November 5, 2012 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

5. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7. This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the

3

claimant has an impairment which is listed in Appendix 1 of the
regulations. If the claimant has such an impairment, the
[Commissioner] will consider him disabled without considering
vocational factors such as age, education, and work experience;
the [Commissioner] presumes that a claimant who is afflicted with a
"listed" impairment is unable to perform substantial gainful activity.
Assuming the claimant does not have a listed impairment, the
fourth inquiry is whether, despite the claimant's severe impairment,
he has the residual functional capacity to perform his past work.
Finally, if the claimant is unable to perform his past work, the
[Commissioner] then determines whether there is other work which
the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8. Although the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering her physical ability, age, education and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460-61, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9. At the time of the ALJ hearing, Plaintiff was 39 years old, with an eleventh grade education. (R. 31). She had previously worked as a hotel housekeeper, janitor, and bakery production worker. (R. 31-33). Plaintiff's alleged disability first stems from a work-related accident on February 19, 2010, in which she injured her foot and ankle. (R. 296). She was later diagnosed with plantar fasciitis and tarsal tunnel syndrome. (R. 432). On July 18, 2010, Plaintiff suffered a myocardial infarction, and she underwent

4

double cardiac bypass surgery a few days later. (R. 188). Following the heart attack and surgery, Plaintiff reported related anxiety and depression, for which she began mental health treatment in September 2010. (R. 605). On March 23, 2012, Plaintiff underwent surgery for tarsal tendon release and endoscopic plantar fasciotomy to relieve her lingering foot pain. (R. 461).

10. In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since February 19, 2010, the onset date of her alleged disability (R. 14)[2]; (2) Plaintiff's status post myocardial infarction and tarsal tunnel syndrome were "severe" impairments within the meaning of the Act (id.); (3) Plaintiff's impairments do not meet or equal the criteria necessary for finding a disabling impairment under the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. 17); (4) Plaintiff is unable to perform any of her past relevant work (R. 20); and (5) Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, with the noted limitation that she can climb stairs only occasionally (R. 21). Ultimately, the ALJ determined that Plaintiff was not under a disability, as defined by the Act, at any time from the alleged onset date through November 5, 2012, the date of his decision. (R. 21)

11. Plaintiff asserts that remand is necessary. First, Plaintiff argues that the ALJ failed to consider her cardiac impairment in his RFC determination. She maintains that the ALJ should have sought a medical opinion regarding her cardiac condition because he is not qualified to independently assess its functional impact, and that his ultimate RFC conclusion is not supported by substantial evidence. Second, Plaintiff argues that the ALJ neglected his duty to develop the record on the extent of Plaintiff's

---

[2] Citations to the administrative record are designated as "R."

impairments from foot pain when he rejected certain "unclear" medical opinions, rather than contacting the treating source for more information. Third, Plaintiff asserts that the ALJ insufficiently explained his credibility analysis, and that he improperly rejected Plaintiff's subjective complaints in favor of relying solely on the objective medical evidence to establish disability. Fourth, Plaintiff argues that the ALJ erred in finding her mental impairments to be non-severe at step two when he primarily relied on opinions given early in Plaintiff's mental health treatment and failed to discuss more serious psychological issues apparent in the record. And further, that he omitted mental status from his RFC determination.

12. Plaintiff's disability period began with her foot injury, and the Court will first address her arguments related to these medical records. Specifically, Plaintiff claims that the ALJ erred when he rejected the opinions of her treatment providers at University Orthopaedic Services because he found their opinions to be unclear. (See R. 19). Plaintiff argues that the ALJ should have requested more information from those providers and, by failing to do so, he neglected his duty to develop the record related to her foot problem before making the RFC determination.

In light of the non-adversarial nature of the benefits proceedings, an ALJ has an obligation to develop the record regardless of whether the claimant is represented by counsel. Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000); Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir.1998). As this Court has recently stated, "the question of whether 'the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity' necessarily dovetails with the 'treating physician rule,' which mandates that the opinion of a claimant's treating physician 'regarding the nature

6

and severity of [the claimant's] impairments' be given controlling weight if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" Swanson v. Colvin, No. 12-CV-645S, 2013 WL 5676028, at *5 (W.D.N.Y. Oct. 17, 2013), quoting 20 C.F.R. § 404.1527(d)(2); see also Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008). The Act further provides that the Commissioner "shall make every reasonable effort to obtain from the individual's treating physician (or other treating health care provider) all medical evidence, including diagnostic tests, necessary in order to properly make [a disability determination], prior to evaluating medical evidence obtained from any other source on a consultative basis." 42 U.S.C. § 423(d)(5)(B).

Here, Plaintiff's treating podiatrist, Dr. Davidson, D.P.M., initially described Plaintiff as 30% disabled on March 25, 2010, following her accident, and noted that she rated her pain as 9/10, but walked with a normal and well-balanced gait. (R. 296-297). On April 22, 2010, Dr. Davidson assessed a 50% improvement since Plaintiff's previous visit, but still deemed her 30% disabled. (R. 300-301). On May 6, 2010, he noted Plaintiff was 90% improved since the April 22nd visit, that she rated her pain as 2/10, and changed the disability assessment to 10%. (R. 303-304). Subsequently, however, Dr. Davidson stated in his May 24, 2010 treatment note that Plaintiff was "100% disabled," following her return to work for one week. (R. 305-306). At that visit, Plaintiff reported her pain as 8/10, but Dr. Davidson again noted she walked with normal and well-balanced gait. (R. 305). On August 12, 2010, Dr. Davidson again assessed her as 100% disabled, noted that her gait was "markedly antalgic," and recommended foot surgery. (R. 307-308). Likewise, a physical therapist in the same practice

characterized Plaintiff as 10% disabled at her initial visit with him on May 19, 2010 (R. 275), but stated she was 100% disabled at four later visits in June and July of 2010. (R. 265, 267, 269, 271). The ALJ afforded these opinions little weight because "Dr. Davidson and the physical therapists did not attach a narrative statement to explain their opinions, and it is unclear whether these opinions state that the claimant is disabled from her prior work, or all work. Dr. Davidson also did not explain why his opinion changed." (R. 19).

The ALJ similarly disregarded the opinion of consultative examiner George Vasiliadis, D.P.M., because he did not explain his disability finding. (R. 20). On the other hand, the ALJ gave great weight to the opinions of impartial medical examiner Peter Riznyk, D.P.M., who examined Plaintiff on September 17, 2010, and January 24, 2011, in connection with her related worker's compensation claim, and consultative examiner Samuel Balderman, M.D., who examined Plaintiff on November 4, 2010, in connection with her claim for social security benefits. (R. 19).

Although an ALJ is permitted to disregard a treating physician's opinion for "good reason," here, the ALJ gave little weight to Plaintiff's treatment providers with regard to her foot problems for the reason that the records did not contain enough information. (R. 19); see 20 C.F.R. 404.1527(c). While the ALJ properly disregarded the conclusory statements that Plaintiff was 100% disabled, see Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (treating physician's statement that claimant is disabled is not itself determinative), he should have sought clarification from Plaintiff's treatment providers in order to complete the record rather rejecting the available opinions entirely. Schaal, 134 F.3d at 505 (rather than rejecting opinions because the clinical findings were

8

inadequate, ALJ had "duty to seek additional information from [the provider] *sua sponte*"); see Clark v. Callahan, No. 96 CIV. 3020 (SAS), 1998 WL 336653, at *2 (S.D.N.Y. June 22, 1998) (remanding case to develop record seeking a medical explanation, with clinical findings, for why plaintiff's condition deteriorated).

At this juncture, the Court is not convinced that there is overwhelming evidence of disability elsewhere in the record; however, given the non-adversarial nature of the disability proceedings, the Court finds that the undetailed treatment notes create a gap, which the ALJ failed to fill. Shaw, 221 F.3d at 131. Furthermore, in rejecting all of Dr. Davidson's opinions, the ALJ left nothing in the record to which he could properly apply the treating physician rule with regard to Plaintiff's foot problem. See Swanson, 2013 WL 5676028, at *5. Nowhere is it apparent that the ALJ asked for clarification, and because he specifically rejected Plaintiff's podiatrist's and physical therapist's treatment notes for lack of information, the Court finds an error of law and will remand the decision for further development of this portion of the record.

13. Plaintiff also argues that the ALJ assessed Plaintiff's RFC using medical opinions that did not address her cardiac impairment, and that he was not qualified to draw the conclusion that she had "recovered well" from her heart attack and surgery. (See R. 18, 20). Moreover, Plaintiff asserts that the record does not support this assessment because of the restrictions placed on Plaintiff immediately following her heart surgery, consultative examiner Dr. Balderman's note indicating that Plaintiff's echocardiogram and stress test should be reviewed "to assess cardiac function," and numerous treatment notes demonstrating ongoing cardiac symptoms. Therefore, according to Plaintiff, the RFC determination was not based on substantial evidence

because the ALJ failed to obtain expert medical opinion regarding the functional limitations caused by her heart problem.

As this Court has recently stated, "it is not per se error for an ALJ to make the RFC determination absent a medical opinion …, [and] remand is not necessary where 'the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity.'" Lewis v. Colvin, No. 13-CV-1072S, 2014 WL 6609637, at *6 (W.D.N.Y. Nov. 20, 2014), quoting Tankisi v. Comms'r of Social Security, 521 F. App'x 29, 34 (2d Cir. 2013). In addition, the "regulatory language provides ample flexibility for the ALJ to consider a broad array of evidence as 'medical opinions.'" Sickles v. Colvin, No. 12-CV-774 MAD/CFH, 2014 WL 795978, at *4 (N.D.N.Y. Feb. 27, 2014), citing 20 C.F.R. § 404.1527 (including "'statements … that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [ ] symptoms, diagnosis and prognosis,' claimant's capabilities, and any physical or mental restrictions"). Similarly, "where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment." Walker v. Astrue, No. 08-CV-0828(A)(M), 2010 WL 2629832, at *7 (W.D.N.Y. June 11, 2010) report and recommendation adopted, No. 08-CV-828A, 2010 WL 2629821 (W.D.N.Y. June 28, 2010), quoting Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 17 (1st Cir. 1996); see also Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983) ("[the Commissioner] is entitled to rely not only on what the record says, but also on what it does not say").

In support of her argument, Plaintiff highlights the following evidence of "abnormal cardiac functioning," which she claims "demanded further assessment from a medical expert." On December 16, 2010, Plaintiff visited the Buffalo General Hospital Heart and Lung Center, where Dr. Ashish Shukla reviewed her October 26, 2010 2-D echocardiogram and noted an "LVEF of 35%-40% with mild to moderate reduction in the ejection fraction." (R. 566-567). Dr. Shukla also recorded that Plaintiff had shortness of breath that was "consistent with PND and orthopnea."[3] (R. 567, 569). On February 10, 2011, Plaintiff again saw Dr. Shukla with complaints of intermittent sharp, stabbing chest pain around the bypass surgery area and mild orthopnea. (R. 564). Plaintiff saw her primary care physician, Dr. Vinod Patel, at UB Family Medicine on April 5, 2011, complaining of on and off chest wall pain. (R. 616). Plaintiff reported to the Heart and Lung Center on May 5, 2011, complaining of pain around her incision site and was assessed with atypical chest pain (R. 562). On July 27, 2011, Plaintiff returned to the Heart and Lung Center, complaining of the same pain. (R. 560). At that visit, Dr. Shukla noted that another 2-D echocardiogram, conducted on April 15, 2011 showed "mild to moderate tricuspid regurgitation and mild mitral regurgitation." (R. 560). On September 19, 2011, Plaintiff saw Dr. Patel at UB Family Medicine, stating she had heart palpitations and episodes of dyspnea.[4] (R. 439). On February 6, 2012, at her preoperative assessment for foot surgery, Plaintiff again complained of cutaneous chest discomfort, and cardiologist Dr. Susan Graham noted an abnormal EKG reading. (R. 558).

---

[3] "Orthopnea is the sensation of breathlessness in the recumbent position, relieved by sitting or standing. Paroxysmal nocturnal dyspnea (PND) is a sensation of shortness of breath that awakens the patient, often after 1 or 2 hours of sleep, and is usually relieved in the upright position." Mukerji V., Dyspnea, Orthopnea, and Paroxysmal Nocturnal Dyspnea, in CLINICAL METHODS: THE HISTORY, PHYSICAL, AND LABORATORY EXAMINATIONS 78 (Walker HK, et al. eds., 3rd ed., 1990), http://www.ncbi.nlm.nih.gov/books/NBK213/.
[4] "Dyspnea refers to the sensation of difficult or uncomfortable breathing." Id.

The cited evidence does not necessarily help Plaintiff because, if supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." See Rosado, 805 F.Supp. at 153. Upon reviewing the same treatment notes cited above, the Court finds substantial evidence to support the ALJ's position that Plaintiff had "recovered well." For example, at the December 16, 2010 visit, Dr. Shukla indicated that Plaintiff "denies any chest pain on exertion, or palpitations" and referred her to cardiac rehabilitation. (R. 566-567). On February 10, 2011, Dr. Shukla recorded that Plaintiff denied chest pain and shortness of breath on exertion, and that her pain was likely from her surgery incision. (R. 564). He also noted that a recent stress test "showed no evidence of ischemia"[5] and recommended that Plaintiff continue with cardiac rehabilitation. (Id.) On April 5, 2011, the treatment note from UB Family Medicine states that Plaintiff "denied any substernal chest pain" and that her congestive heart failure was "under good control." (R. 616). At the May 5, 2011 visit to the Heart and Lung Center, when Dr. Beck examined Plaintiff's scar area, he assessed the pain was not caused by exertion and that she "feels that is getting better." (R. 562). Dr. Beck also noted that Plaintiff "exercises and ambulates with no problem", and "continues to improve on her exercise tolerance." (R. 562). On July 27, 2011, Plaintiff denied chest pain and shortness of breath at rest or on exertion, denied palpitations, reported that she had not been following up with cardiac rehabilitation, but said that her functional status was good. (R. 560). On September 19, 2011, the note indicates that Plaintiff

---

[5] "Myocardial ischemia occurs when blood flow to your heart is reduced, preventing it from receiving enough oxygen. The reduced blood flow is usually the result of a partial or complete blockage of your heart's arteries (coronary arteries)." http://www.mayoclinic.org/diseases-conditions/myocardial-ischemia/basics/definition/CON-20035096?p=1

was "doing well" and denied cardiovascular symptoms. (R. 439). Finally, at the preoperative assessment on February 6, 2012, Plaintiff had no cardiovascular complaints. (R. 558-559). According to Dr. Graham, Plaintiff was "medically stable from a cardiovascular perspective," had "no signs or symptoms of heart failure at this time," and despite a persistently abnormal EKG, it "has improved since 2010." (Id.). Dr. Graham thus cleared Plaintiff for foot surgery. (Id.). Thus, the Court finds substantial evidence in the record supports the ALJ's assessment of Plaintiff's cardiac impairment.

In this instance, the ALJ did not reject any treating physician's opinion in favor of drawing his own differing conclusion. See Rosa, 168 F.3d at 79 (2d Cir. 1999) ("ALJ cannot arbitrarily substitute his own judgment for competent medical opinion"). To the contrary, the ALJ's RFC analysis, albeit brief regarding Plaintiff's heart condition, refers to four selected records that are consistent with the evidence discussed above and representative of the record as a whole. See Cichocki v. Astrue, 729 F.3d 172, 178 (2d Cir. 2013) ("ALJ need not recite every piece of evidence that contributed to the decision, so long as the record permits us to glean the rationale of an ALJ's decision"), citing Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983). In his decision, the ALJ noted that, following her myocardial infarction and double bypass surgery, on February 13, 2011, Plaintiff complained of shortness of breath, but a chest x-ray was negative. (R. 18). The ALJ also addressed notes discussed herein from Plaintiff's July 27, 2011 visit to the Heart and Lung Center, September 19, 2011 visit with Dr. Patel at UB Family Medicine, and Dr. Graham's February 6, 2012 note clearing Plaintiff for foot surgery. (Id.). While the ALJ may not be qualified to make medical determinations, he is permitted to draw the commonsense conclusion from the record that Plaintiff's

13

cardiovascular disease does not cause any significant limitations for sedentary work. Walker, 2010 WL 2629832, at *7.[6] Thus, we cannot say that the ALJ's failure to obtain a medical opinion specifically addressing Plaintiff's limitations due to cardiovascular disease demands remand as a matter of law.

14. Regarding Plaintiff's alleged mental health issues, Plaintiff argues the ALJ erred in determining that her major depressive and anxiety disorders were nonsevere. (See R. 15). Plaintiff further argues that, even if his determination was otherwise based on substantial evidence, the ALJ did not consider her mental impairments when shaping her RFC, therefore, his error is not harmless. See generally Reices–Colon v. Astrue, 523 F. App'x 796, 798 (2d Cir. 2013) (any error in failing to identify a severe impairment is harmless if that impairment is specifically considered during the subsequent steps).

A "severe impairment" is "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities," including understanding and carrying out simple instructions and responding appropriately to others in usual work situations. 20 C.F.R. § 404.1520(c); § 404.1521. Here, after considering the four broad functional areas of 20 C.F.R. § 404.1520a's special technique for assessing mental impairments, the ALJ found that Plaintiff's depression and anxiety did not cause more than a minimal limitation on her ability to perform basic mental work activities. (R. 15). Specifically, the ALJ stated that Plaintiff had no more than a mild limitation in daily living activities; social functioning; and concentration, persistence and pace; and further found that there were no periods of

---

[6] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567

14

decompensation of extended duration. (Id.); see 20 C.F.R. § 404.1520a(d)(1) (if the limitations in the first three areas are rated mild or less, and there are no episodes of decompensation, the impairment will not be found severe).

In so concluding, the ALJ gave great weight to the opinions of consultative examiner Gregory Fabiano, Ph.D., who examined Plaintiff November 4, 2010, and non-examining psychologist D. Mangold, who reviewed Plaintiff's records on November 19, 2010. (R. 16, 341, 351). Plaintiff asserts that, because both of these opinions were issued near the beginning of her mental health treatment, neither Dr. Mangold nor Dr. Fabiano had the benefit of treatment notes for the subsequent time period, and were, therefore, unaware of Plaintiff's alleged multiple personality disorder (first divulged on September 20, 2011; R. 531), her Global Assessment of Functioning ("GAF") score of 50 (determined on June 29, 2011; R. 511, 515), and that the last several treatment notes indicated a decline in Plaintiff's mental condition. (R. 488, 553).

Although the ALJ's reconciliation of inconsistencies in the record is owed great deference, it is impossible for the Court to know whether and how the ALJ weighed this potentially notable evidence, as he did not refer to it in his opinion. See Jenkins v. Comm'r of Soc. Sec., 769 F. Supp. 2d 157, 162 (W.D.N.Y. 2011) ("the Court is not free to engage in speculation concerning what the ALJ might have concluded" about Plaintiff's impairments had he considered and credited other psychological evidence in the record); but see Greene v. Colvin, 936 F.Supp.2d 216, 226 (W.D.N.Y. 2013) (ALJ is not "required to discuss all the evidence submitted, and [his] failure to cite specific evidence does not indicate that it was not considered"). Generally, when the Court is "unable to fathom the ALJ's rationale in relation to evidence in the record, especially

15

where credibility determinations and inference drawing is required of the ALJ," we will not "hesitate to remand for further findings or a clearer explanation for the decision." Cichocki, 729 F.3d at 177, quoting Berry, 675 F.2d at 469. Thus, this portion of the ALJ's decision is remanded for further examination of the record. Accordingly, Plaintiff's related argument that the ALJ failed to incorporate mental function into Plaintiff's RFC is moot.

15. Finally, Plaintiff argues that the ALJ's credibility analysis was improper because he failed to explain his conclusory findings and appears to have rejected Plaintiff's subjective reports of pain simply because the objective medical evidence did not independently support a finding of disability. (See R. 18). Plaintiff concedes that the ALJ followed the proper two-step framework, but did not consider the appropriate factors listed in SSR 96-7p. Nevertheless, given this case's remand for development of the record, the ALJ is necessarily required to reevaluate Plaintiff's credibility in light of any newly obtained evidence. See Rosa, 168 F.3d at 83.

16. After carefully examining the record, this Court finds cause to remand this case to the ALJ for further administrative proceedings consistent with this decision. Plaintiff's Motion for Judgement on the Pleadings is therefore granted. Defendant's Motion for Judgement on the Pleadings is denied.


IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 8) is GRANTED

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 10) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this Decision and Order.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated: August 17, 2015
Buffalo, New York

                                                         <u>/s/William M. Skretny</u>
                                                           WILLIAM M. SKRETNY
                                              United States District Judge